IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE EMMANUEL ORTIZ          :
CABRERA,                     :
                             :
          Plaintiff          :     CIVIL NO. 1:16-CV-392
                             :
     vs.                     :
                             :
BRIAN S. CLARK,              :     (Judge Rambo)
et al.,                      :
                             :
          Defendants         :

<u>MEMORANDUM AND ORDER</u>

## Background

On March 4, 2016, Plaintiff Jose Emmanuel Ortiz Cabrera, an inmate presently confined at the York County Prison, York, Pennsylvania, filed a <u>pro se</u> civil rights complaint pursuant to 42 U.S.C. § 1983 against ten individual employed at the Adams County Prison, nine "John or Jane Does"[1] and a Pennsylvania State Trooper. (Doc. 1.) Along with his complaint, Cabrera submitted a motion for leave to proceed <u>in forma pauperis</u> under 28 U.S.C. § 1915.

---

1. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants. <u>Sheetz v. Morning Call</u>, 130 F.R.D. 34 (E.D. Pa. 1990).

The complaint is a rambling, disjointed, vague and confusing document which consists of 95 paragraphs. (Id.)  It primarily sets forth six incidents of alleged sexual abuse or harassment by prison guards and, after Plaintiff reported those incidents, how the prison officials and the Pennsylvania State Trooper responded to Plaintiff's allegations. (Id.)

The court will review the complaint pursuant to the screening provisions of the Prison Litigation Reform Act of 1995 and start this review by listing the named defendants and then flesh out the allegations leveled against them.  The ten individuals employed at Adams County Prison are as follows: (1) Brian S. Clark, Warden; (2) Michael Giglio, Deputy Warden of Security; (3) Dzung Luong, Deputy Warden of Training; (4) Alyssa Harris, Business Manager; (5) Robert Stevens, Director of Treatment Services and Misconduct Hearing Examiner; (6) Larry Snyder, (7) Jorge Alvarez, and (8) Joe Boot, Lieutenants; and (9) Michael Smith and (10) Benjamin Hersh, Correctional Officers. (Id. at 5, ¶¶ 5-14.)  The Pennsylvania State Trooper named as a defendant by Plaintiff is George H. Kelly, Jr. (Id. at 6, ¶ 24.)

2

Plaintiff names three "Jane Does," a Lieutenant, Grievance Coordinator and Medical Supervisor; five "John Doe," Correctional Officers; and one "John Doe," Lieutenant. (Id. at 3-4, ¶¶ 15-23.) At times it appears that Plaintiff gives certain "John or Jane Doe" defendants fictitious names and that the names given some of the Defendants by Plaintiff are fictitious.

Plaintiff alleges that he commenced his confinement at Adams County Prison on June 12, 2015, after he was sentenced to serve three to twelve months for a misdemeanor. (Id. at 6, ¶ 27.) Plaintiff appears to alleged that the first incident of sexual abuse occurred on June 21, 2015, by two correctional officers but he only names one of those officers, Defendant Smith.[2] (Id. at 6-7, ¶ 28 & at 9, ¶¶ 49-50.) Plaintiff claims that Defendant Smith came into his cell and "touched him inappropriately and commented 'are you ready for me[.]'" (Id. at 9, ¶ 50.) Plaintiff claims that Defendant Smith "about 7:30 to 9:45 am (sic) . . .

_____

2. In describing this incident Plaintiff states that he "reported a Correctional Officer who Plaintiff referred to by the name Michael Smith." (Id. at 9, ¶ 49.)

put his hands on Plaintiff['s] nipples and in a sexual insinuation told Plaintiff 'are you ready for me.'" Id. Plaintiff further alleges that Defendant Smith grabbed his genitals and attempted to kiss Plaintiff on the mouth and that Plaintiff "noted . . . a strong intoxicating odor coming from his mouth and person." Id.

In describing the second incident of sexual harassment Plaintiff refers to an individual by the name of Atwood.[3] Id. at 9, ¶ 51.  Immediately thereafter apparently continuing with a description of the second incident Plaintiff refers to a "John Doe(7)" and claims the incident occurred on September 13, 2015 and the guard "referenced (sic) to wanting to eat the Plaintiff 'Butt' and if the guard was allowed he would give Plaintiff all the food he wanted to eat" and "they should meet up outside the prison [because] they could do things on the outside they can't do inside the prison."  (Id. at 9-10, ¶¶ 52, 53.) Plaintiff makes no allegations that "Atwood" or "John Doe (7)" engaged in

---

3. He refers to this individual by stating "[t]he seco[n]d incident the Plaintiff referred to by the last name Atwood." (Doc. 1, at 9, ¶ 51.)

any inappropriate touching only that they verbally harassed him.

The third incident occurred on an unspecified date and involved a correctional officer who Plaintiff "referred to by the last name Coutorry." (Id. at 10, ¶ 57.) Plaintiff claims that this correctional officer "notice[d] the Plaintiff had an ulcer on his mouth" and "told him the ulcer was the result of performing a sexual act." (Id. at 10, ¶ 58.)  Plaintiff makes no allegations that "Coutorry" engaged in any inappropriate touching only that he verbally harassed him.

The fourth incident alleged by Plaintiff appears to have occurred on the same day as the first incident. (Id. at 10, ¶¶ 61-62.) Plaintiff alleges that on June 21, 2015, a "Defendant John Doe (6) called him derogatory names and offensive words relating to sexual [orientation] and race on several occasion[s]" but he also indicates that the incident involved two correctional officers "referred to by the last name Shower and Ferry." Id. Plaintiff makes no allegations that "John Doe (6)" or correctional officers Shower and

Ferry engaged in any inappropriate touching only that they verbally harassed him.[4]

The fifth incident alleged by Plaintiff occurred on an unspecified date and involved Defendant Hersh. (Id. at 10, ¶¶ 63-65.)[5] Plaintiff alleges that Defendant Hersh commented on his sexual orientation. Id. Plaintiff then makes some vague and incoherent allegations that Defendant Hersh planted contraband, apparently in his cell, in retaliation for grievances he filed.[6] Id.  Plaintiff makes no allegations that

---

4.  Neither Shower nor Ferry are named as defendants by Plaintiff.

5.  Plaintiff states that the fifth incident involved "a Correctional Officer who the Plaintiff referred to by the name of Benjamin Hersh."

6.  The allegations in toto, including grammatical and spelling errors, in paragraph 65 are as follows:

> This particular Defendant Benjamin Hersh plant contraband in Plaintiff cell in retaliation Plaintiff Grievance against his continued threats and obligated Plaintiff apologized with him in order to talk to the Warden for Plaintiff can see his family in a special visit. Wish one was a lie just to confuse in order to control Plaintiff, and scare Plaintiff in order to stop the Grievances. He also obligated Plaintiff to write a slip and a note in peace of paper apologizing with the Warden,

(continued...)

Defendant Hersh engaged in any inappropriate touching only that he verbally harassed him.

Finally, the sixth incident allegedly involved a correctional officer "who Plaintiff referred to by the last name Knaub." (Id. at 11, ¶ 68.) Plaintiff alleges that Knaub[7] "threatened to write the Plaintiff up for raping him (the guard) in the shower." (Id. at 11, ¶ 69.)

Plaintiff apparently filed multiple grievances with prison officials relating to the alleged sexual abuse and harassment as well as wrote letters to the Pennsylvania State Police regarding the abuse and harassment.  (Id. at 7, ¶ 31 & 10-11, ¶¶ 65-68.) Plaintiff appears to allege that the grievances were denied or ignored by prison officials.

---

6.   (...continued)
     Deputy Warden, Business Manager, Director
     Stevens and him at the end, and to apologize
     with the other sexual depredator staff when
     Plaintiff saw them.  And he put it in a flowers
     that Plaintiff just make for his Counselor of
     Mental Health Mrs. Jen. He opened Plaintiff
     cell and walks away with flowers.

7.  Knaub is not named as a defendant by Plaintiff.

7

During Plaintiff's confinement at the Adams County Prison he was allegedly issued several misconduct reports. (Id. at 6, ¶ 28.)  Plaintiff claims that he spent 6 months and 11 days in solitary confinement as the result of disciplinary proceedings which were instituted in retaliation for filing grievances. Id.

Plaintiffs claims that Defendant Stevens, acting as a Hearing Examiner, found him guilty of the misconduct reports and that with respect to some of the reports there was no evidence to support the guilty findings. (Id. at 7, ¶35.)  Plaintiff gives no details regarding the misconduct charges.

The only allegations against Defendants Clark, Giglio and Luong are with respect to ignoring or denying grievances and acting unfavorably on appeals from sanctions imposed by the Hearing Examiner. (Id. at 8, ¶39, 44, & at 11, 66-67.)

With respect Defendants Alvarez, Snyder and Boot, Plaintiff in a conclusory fashion merely states that they filed false misconduct reports in retaliation for his filing grievances relating to the sexual abuse and harassment. (Id. at 9, ¶ 46.)

8

As for Defendant Kelly, the State Trooper, Plaintiff alleges that Trooper Kelly was assigned to investigate his allegations and met with him in November, 2015. (Id. at 7, ¶ 32.) Plaintiff alleges he reported to Defendant Kelly the six incidents outlined above and that some of the incidents were captured "on the prison surveillance" system. (Id. at 7-8, ¶¶ 33-34, 40.)  Plaintiff claims that Trooper Kelly told him that "he better stop the accusation[s] towards the Correctional Officers or [Trooper Kelly] may find DNA in Plaintiff girl (sic) and accuse Plaintiff of Rape." (Id. at 8, ¶ 41.)  Plaintiff further alleges that on February 23, 2016, Trooper Kelly filed charges against him for making false reports. (Id. at 11, ¶ 70.) Plaintiff states that the charges were filed before a District Justice in Adams County and that a preliminary hearing is scheduled for March 30, 2016. Id.

As for Defendant Harris Plaintiff alleges without providing any details that Defendant Harris, as Business Manager of Adams County Prison, denied him a proper medical diet, he was served cold meals and he suffered allergies from the meals he was served during

his confinement at the Adams County Prison. (Id. at 12, ¶¶ 72-76.) Plaintiff also alleges that grievances he filed relating to those conditions were denied by prison officials, including Warden Clark. Id.

Plaintiff requests declaratory, injunctive and monetary relief. With respect to monetary relief Plaintiff requests compensatory and punitive damages.

The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., the full filing fee ultimately must be paid (at least in a non-habeas suit). Also, a new section was added which relates to screening complaints in prisoner actions.[8]  For the reasons

_____

8. Section 1915(e)(2) provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

outlined below, all of Cabrera's claims, other than with
respect to Defendant Smith, will be dismissed with leave
to file an amended complaint.  However, the court will
not direct service on Smith until Plaintiff has had an
opportunity to file an amended complaint.[9]

**Discussion**

When considering a complaint accompanied by a
motion to proceed in forma pauperis, a district court
may rule that process should not be issued if the
complaint is malicious, presents an indisputably
meritless legal theory, or is predicated on clearly
baseless factual contentions.  Neitzke v. Williams, 490
U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d
772, 774 (3d Cir. 1989).  Indisputably meritless legal
theories are those "in which either it is readily
apparent that the plaintiff's complaint lacks an
arguable basis in law or that the defendants are clearly

---

9.  An amended complaint supersedes the original
complaint.  If Plaintiff files an amended complaint it
should be complete in all respect without reference to
the original complaint.

11

entitled to immunity from suit . . . ."  Roman v.
Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting
Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir.
1990)).  The Supreme Court has recognized that "a
finding of factual frivolousness is appropriate when the
facts alleged rise to the level of the irrational or the
wholly incredible . . . ."  Denton v. Hernandez, 504
U.S. 25, 33 (1992); see also Roman, 904 F.2d at 194
(baseless factual contentions describe scenarios clearly
removed from reality).  The Third Circuit added that
"the plain meaning of 'frivolous' authorizes the
dismissal of in forma pauperis claims that . . . are of
little or no weight, value, or importance, not worthy of
serious consideration, or trivial."  Deutsch v. United
States, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has
been determined that "the frivolousness determination is
a discretionary one," and trial courts "are in the best
position" to determine when an indigent litigant's
complaint is appropriate for summary dismissal.  Denton,
504 U.S. at 33.

Even though a complaint is not frivolous it still may be dismissed under the screening provision of the PLRA if it fails to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6) is the basis for this type of dismissal.  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal,___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the issue of whether a complaint states a viable claim, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 580-581 (2003);  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether Plaintiff has sufficiently alleged personal involvement of the defendant in the act which he claims violated his rights.  Liability may not be imposed under § 1983 on the traditional standards of <u>respondeat</u> <u>superior</u>.  <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989) (citing <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In

Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  868 F.2d at 106 n.7.

There are only two avenues for supervisory liability. First, as mentioned above if the supervisor knew of, participated in or acquiesced in the harmful conduct, and second, if a supervisor established and maintained a policy, custom or practice which directly caused the constitutional harm. Id.; Santiago v. Warminster Township, 629 F.3d 121, 129 (3d Cir. 2010); A.M. ex rel. J.M.K. v. Luzerne County Juvenile Center, 372 F.3d 572, 586 (3d Cir. 2004).  However, with respect to the second avenue of liability conclusory, vague and speculative allegation of custom, policy or practice are insufficient under Twombly and Iqbal. Id.

With respect to Defendants Clark, Giglio and Luong, the court discerns no allegations in the complaint that they were involved in any conduct which violated Plaintiff's constitutional rights. Their only

16

involvement was with respect to the handling of
Plaintiff's grievances and appeals from disciplinary
proceedings.  Such involvement is insufficient as a
matter of law to render those defendants liable.  "[T]he
failure of a prison official to act favorably on an
inmate's grievance is not itself a constitutional
violation."  Rauso v. Vaughn, Civil No. 96-6977, 2000 WL
873285, at *16 (E.D.Pa., June 26, 2000). See also
Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335
(Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The
defendants were not obligated to 'properly' respond to
Overholt's grievances because there is no inherent
constitutional right to an effective prison grievance
procedure. Hence, his allegations that the defendants
did not properly respond to his grievances simply do not
rise to the level of a constitutional violation.")
(citations omitted); Mitchell v. Keane, 974 F.Supp. 332,
343 (S.D.N.Y.1997) ("it appears from the submissions
before the court that Mitchell filed grievances, had
them referred to a prison official, and received a

letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April 27, 2009); Caldwell v. Hall, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged

18

conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL
566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an
administrative appeal process is not sufficient to
establish personal involvement)"). Consequently,
Plaintiff's claims against Clark, Giglio and Luong are
not viable and the complaint as it relates to them will
be dismissed with leave to file an amended complaint.

Pro <u>se</u> parties are accorded substantial
deference and liberality in federal court. <u>Haines v.
Kerner</u>, 404 U.S. 519 (1972); <u>Hughes v. Rowe</u>, 449 U.S. 5
(1980).  They are not, however, free to ignore the
Federal Rules of Civil Procedure.  Federal Rule of Civil
Procedure 8 requires that a complaint contain a short
and plain statement setting forth (1) the grounds upon
which the court's jurisdiction rests, (2) the claim
showing that the pleader is entitled to relief, and (3)
a demand for judgment for the relief sought by the
pleader.

Although there is not a heightened pleading
standard in § 1983 cases, a § 1983 complaint in order to

comply with Rule 8 must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer.  A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

Under even the most liberal construction, the complaint as it relates to Defendants Harris, Stevens, and Hersh is in violation of Rule 8 and fails to state a claim on which relief may be granted.  It does not give those defendants fair notice of what Plaintiff's claims are and the grounds upon which the claims rest.  There are no factual allegations with respect to where and when each defendant was involved in wrongdoing. Even taking into account the fact that Plaintiff is proceeding pro se, the complaint is not in conformity

with Rule 8 of the Federal Rules of Civil Procedure.
Accordingly, the complaint is subject to <u>sua</u> <u>sponte</u>
dismissal by the court.  Such dismissal will be ordered
with leave to file an amended complaint. <u>See Ala' Ad-Din</u>
<u>Bey v. U.S. Department of Justice</u>, 457 Fed.Appx. 90, 91
(3d Cir. 2012)(quoting <u>Salahudin v. Cuomo</u>, 861 F.2d 40
(2d Cir. 1988)).

    With respect to Defendants Snyder, Alvarez, and
Boot, Plaintiff appears to be attempting to set forth
retaliation claims for filing grievances.

    A retaliation claim may be viable both under the
Due Process Clause of the Fourteenth Amendment as well
as the First Amendment. <u>Rauser v. Horn</u>, 241 F.3d 330,
333 (3d Cir. 2001); <u>Smith v. Mensinger</u>, 293 F.3d 641,
653 (3d Cir. 2002).  The elements of both types of
claims, however, are essentially the same. <u>Id.</u>

    To establish a Section 1983 retaliation claim, a
plaintiff bears the burden of satisfying three elements.
First, a plaintiff must prove that he was engaged in a
constitutionally protected activity. <u>Rauser v. Horn</u>, 241

F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must
demonstrate that he "suffered some 'adverse action' at
the hands of prison officials." Id. (quoting Allah v.
Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This
requirement is satisfied upon showing that "the action
'was sufficient to deter a person of ordinary firmness
from exercising his First Amendment rights.'" Id.
(quoting Allah, 229 F.3d at 225). Third, a prisoner must
prove that "his constitutionally protected conduct was
'a substantial or motivating factor' in the decision to
discipline him" or take the adverse action. Id.
(quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S.
274, 287 (1977).[10]

Plaintiff's retaliation claims against Snyder,
Alvarez and Boot suffers from the same Rule 8 defects as

---

10.  Under Smith v. Mensinger, filing a false misconduct
report is cognizable as a denial of due process when
the false misconduct charge is filed "for the sole
purpose of retaliating against an inmate for his/her
exercise of a constitutional right" such as his or her
right to file a grievance with state officials or a
lawsuit regarding prison conditions. 293 F.3d at 653-
654 (emphasis added).

the claims against Harris, Steven and Hersh.
Consequently, those claims will be dismissed with leave
to file an amended complaint.

Also, the claims against Trooper Kelly appear to
be based on a similar vein. The threatening statement by
Trooper Kelly is that if Plaintiff continued to make
allegations of sexual abuse and harassment against
correctional officers, he would plant evidence which
would incriminate Plaintiff in a sexual crime. Plaintiff
does not allege that this deterred him from filing
grievances or complaints regarding the alleged
harassment or abuse by correctional officers.  He
further does not alleged that Trooper Kelly followed
through with the alleged threat to plant evidence.
Instead, Plaintiff alleges that Trooper Kelly filed
criminal charges against him, i.e., Plaintiff falsely
reported a crime.  Plaintiff admits that a preliminary
hearing is scheduled before a state District Justice on

March 30, 2016.[11] To arrive at this stage, a criminal complaint had to be filed and an arrest warrant or summons issued by a District Justice based on a finding of probable cause that a crime had been committed. There are no allegations from which it can be concluded that Trooper Kelly took an adverse action against Plaintiff because of grievances or complaints by Plaintiff that corrections officers sexually abused him. In light of the above circumstances, including the pending criminal proceedings, the court will dismiss the claims leveled against Trooper Kelly. See Heck v. Humphrey, 512 U.S 477

---

11. The docket of Adams County Magisterial District 51-3-01 was accessed using The Unified Judicial System of Pennsylvania Web Portal and reveals that on February 11, 2016, a criminal complaint was filed against Plaintiff charging him with two counts of making false reports under 18 Pa.C.S. § 4906(a) and (b)(1). Section 4906(a) states that "a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree." Subsection (b)(1) states that "a person commits a misdemeanor of the third degree if he [] reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur[.]" The date of the offenses was June 1, 2015, which is 11 days before Plaintiff was confined at Adams County Prison.

(1994);[12] <u>Smithson v. Rizzo</u>, 2015 WL 1636143, at* 2-4, 12 (M.D.Pa. April 7, 2015)("The final termination rule announced in <u>Heck</u> also bars Plaintiff's § 1983 claims that have the effect of impugning the underlying [state] criminal charges which are still pending against Plaintiff.").

Plaintiff, as outlined above, sets forth several allegations of sexual harassment.  Other than with respect to Defendant Smith where there are allegations of inappropriate physical contact, the allegations do not go beyond mere harassing words and such verbal harassment is not actionable under § 1983. <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); <u>Maclean</u>

---

12. In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whole unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id.</u>  at 486-87.

<u>v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995);
<u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa.
1993) ("Mean harassment . . . is insufficient to state a
constitutional deprivation."); <u>Prisoners' Legal Ass'n v.
Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal
harassment does not give rise to a constitutional
violation enforceable under § 1983.").

Mere threatening language and gestures of a
custodial officer do not, even if true, amount to
constitutional violations.  <u>Fisher v. Woodson</u>, 373 F.
Supp. 970, 973 (E.D. Va. 1973); <u>see</u> <u>also</u> <u>Balliet v.
Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal
abuse is not a civil rights violation . . ."), aff'd,
800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional
claim based only on verbal threats will fail regardless
of whether it is asserted under the Eighth Amendment's
cruel and unusual punishment clause, <u>see</u> <u>Prisoners'
Legal Ass'n</u>, 822 F. Supp. at 189, or under the
Fourteenth Amendment's substantive due process clause,
<u>see</u> <u>Pittsley v. Warish</u>, 927 F.2d 3, 7 (1st Cir. 1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right.  Bieros v. Nicola, 860 F. Supp. 226, 233 (E.D. Pa. 1994); see also Prisoners' Legal Ass'n, 822 F. Supp at 189; Murray, 809 F. Supp. at 384. Consequently, the claims against Defendant Smith cannot be dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

27

1.  Plaintiff's motion to proceed in forma pampers (Doc. 2) is construed as a motion to proceed without full prepayment of the filing fee and is **GRANTED.**

2.  The claims against Defendants Clark, Giglio, Luong, Harris, Stevens, Snyder, Alvarez, Boot, and Hersh are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) with leave to file an amended complaint, consistent with the background of this order, within twenty (20) days of the date hereof.

3.  The claims against Defendant Kelly are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) without leave to file an amended complaint.[13]

4.  The court will defer service of the original complaint on Defendant Smith for twenty (20) days. If Plaintiff elects to file an amended complaint, it will

---

13.  In light of Heck it would be futile to allow Plaintiff to file an amended complaint with respect to Trooper Kelly.

supersede the original complaint and must be complete in all respects without reference to the original complaint.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated: March 22, 2016