IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE EMMANUEL ORTIZ CABRERA, | : | |
| Plaintiff | : | |
| | : | No. 1:16-cv-00392 |
| v. | : | |
| | : | (Judge Rambo) |
| BRIAN S. CLARK, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Pending before the Court is Defendant Killian's motion for summary judgment (Doc. No. 54) and Plaintiff's motion for summary judgment (Doc. No. 53). Based upon a review of the motions and related documentation, Defendant Killian's motion will be granted and Plaintiff's motion will be deemed withdrawn.

## I. BACKGROUND[1]

### a. Procedural History

By way of relevant background, Plaintiff, Jose Emmanuel Ortiz Cabrera, an inmate presently confined at the State Correctional Institution at Chester, Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on March 4, 2016. (Doc. No. 1.) Plaintiff named ten individuals employed at the Adams County Prison ("ACP") as Defendants. (Id.) After conducting an initial screening of the complaint, the Court dismissed the original complaint, except as to

---

[1] Given that the instant motions for summary judgment concern only Plaintiff and Defendant Killian, the Court provides those facts pertinent only to Defendant Killian.

1

Defendant Smith, but granted Plaintiff leave to file an amended complaint. (Doc. No. 10.) On April 14, 2016, Plaintiff filed an amended complaint. (Doc. No. 16.) The Court again screened the amended complaint and by Memorandum and Order dated April 28, 2016, dismissed the amended complaint and all claims and Defendants except for a sexual abuse claim against Defendant Smith, a failure to protect claim against Defendant Snyder, a retaliation claim against Defendant Clark, and an Eighth Amendment deliberate indifference to a serious medical need claim against Defendants Killian and Harris. (Doc. No. 17.)

Subsequently, Defendant Killian filed an answer to the amended complaint on August 3, 2016 (Doc. No. 33), Defendant Smith filed an answer to the amended complaint on October 11, 2016 (Doc. No. 40), and Defendants Snyder, Clark, and Harris filed an answer to the amended complaint on April 13, 2017 (Doc. No. 47). After the close of discovery but within the dispositive motions deadline, Plaintiff filed a motion for summary judgment on June 14, 2017 (Doc. No. 53), and Defendant Killian filed a motion for summary judgment along with a statement of facts on July 10, 2017 (Doc. Nos. 54, 55, 56). Defendant Killian also filed a brief in support of her motion for summary judgment on July 24, 2017. (Doc. No. 58.) On August 14, 2017, Plaintiff filed documents entitled a "motion for opposition to summary judgment against Plaintiff" (Doc. No. 60), a "brief in support of motion for opposition to summary judgment against Plaintiff" (Doc. No. 61), and a

"concise statement of material facts of Plaintiff, Cabrera, in support of motion for opposition to summary judgment against Plaintiff" (Doc. No. 61-1). A review of these filings appears to be Plaintiff's oppositional briefs to Defendant Killian's motion for summary judgment. Plaintiff has not filed a brief in support of his motion for summary judgment.[2]

### b. Statement of Facts[3]

Plaintiff initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 for incidents arising out of Plaintiff's incarcerated at ACP between June 12,

---

[2] While this document purports to be a motion for summary judgment, Plaintiff has neither filed a statement of material facts or a brief in support of the motion. Middle District of Pennsylvania Local Rule 56.1 provides that a motion for summary judgment shall be accompanied by "a separate, short and concise statement of material facts…." Additionally, Local Rule 7.5 requires a brief in support of the motion to be filed within fourteen (14) days after the filing of the motion. M.D. Pa. L.R. 7.5. "If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." Id. Accordingly, because Plaintiff has neither submitted a brief in support of his motion for summary judgment or a statement of material facts, Plaintiff's motion (Doc. No. 53) is deemed withdrawn.

[3] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. LR 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein derives from Defendant Killian's Rule 56.1 statement of material facts. (See Doc. No. 55.) While Plaintiff filed what appears to be a counter-statement of facts, his filing runs afoul of Local Rule 56.1 as he does not respond to Defendant Killian's statement of facts. Moreover, to a large extent, Plaintiff fails to provide references to the record to support those facts he opposes. (See Doc. No. 61-1.) The Court accordingly deems the facts set forth by Defendant Killian to be undisputed unless otherwise noted by the Court. See Local Rule 56.1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa., Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1 … by failing to cite to specific portions of the record in support of his responsive concise statement of facts.")

2015 and December 23, 2015. (Doc. No. 55 ¶¶ 1, 6.) As it pertains to the instant Defendant Killian, Plaintiff alleges that he was denied a previously prescribed diet for his kidney disease while incarcerated at ACP. (Id. ¶ 2.) Specifically, Plaintiff alleges a claim of deliberate indifference under the Eighth Amendment on the basis that Defendant Killian failed to authorize a proper medical diet, previously prescribed by a kidney specialist at DaVita Cottman Kidney Center in Philadelphia ("DaVita"). (Id. ¶ 10.) At the time of the alleged events, Defendant Killian was the Health Services Administrator at PrimeCare Medical Inc. ("PrimeCare"), the medical provider at ACP. (Id. ¶ 8.)

In early 2014, Plaintiff suffered from renal failure related to polysubstance abuse, including cocaine, marijuana and heroin. (Id. ¶¶ 11, 12.) Approximately one year before incarceration at ACP, Plaintiff was treated at Jeanes Hospital for acute tubular necrosis with dialysis and put on a liquid diet. (Id. ¶¶ 13-16.) On May 10, 2014, Plaintiff was discharged from Jeanes Hospital to DaVita. (Id. ¶ 17.) Thereafter, on June 30, 2014, Plaintiff was admitted to Temple University Hospital where he stated that he had not been dialyzed in a month because his kidneys were improving. (Id. ¶¶ 18, 19.) On July 2, 2014, Plaintiff discharged himself from Temple University Hospital against medical advice, despite the fact that he had an active blood infection. (Id. ¶ 21.)

On June 12, 2015, Plaintiff was incarcerated at ACP. (Id. ¶ 22.) As part of the intake process, Plaintiff was medically screened and interviewed. (Id. ¶ 23.) During his screening, Plaintiff's renal failure and dialysis were noted. (Id. ¶ 25.) However, Plaintiff failed to inform the medical staff that he was on a special diet, that a medical provider prescribed him a special diet, or that he had any type of allergy. (Id. ¶¶ 26, 27.) In fact, the Receiving Screening form specifically notes: "Special diet: No" and "Allergies: No." (Id. ¶ 28.) In a subsequent Medical Booking Form dated October 4, 2015, it was again noted that Plaintiff had no special diet. (Id. ¶ 57.)

On June 29, 2015, Plaintiff filed an Inmate Request Slip, requesting that water juice be exchanged for milk at lunch and that he be given snacks between meals because he complained that he was underweight. (Id. ¶ 31.) In response to this request, it was determined that Plaintiff's body max index did not qualify him for a special diet. (Id. ¶ 33.) Next, on July 10, 2015, Plaintiff was sent to medical for a bee sting. (Id. ¶¶ 34, 35.) While Plaintiff had previously indicated that he had no allergies and his Chart Notes reflected the same, his chart was updated to reflect his allergy to bees. (Id. ¶ 35.)

On July 31, 2015, Plaintiff filed another Inmate Request Slip requesting snacks or vitamins and a weight check. (Id. ¶ 39.) Again, Plaintiff's chart was reviewed and it was determined that he did not qualify for such a diet. (Id. ¶ 41.)

On August 4, 2015, Plaintiff filed a Sick Call Request, again requesting vitamins. (Id. ¶ 43.) In response, Defendant Killian noted that Plaintiff stated during rounds that he was "done with this facility" and he denied that he needed anything from medical. (Id. ¶ 44.) Plaintiff filed another Sick Call Request on August 5, 2015, again requesting vitamins. (Id. ¶ 45.) In response, it was noted that Plaintiff's request for multi-vitamin was denied by the provider. (Id. ¶ 47.)

A few weeks later, on August 20, 2015, Plaintiff filed an Inmate Request Slip to request a high protein diet because he complained that he had no power, was weak, and had migraine headaches. (Id. ¶ 50.) In response to the request, it was noted that Plaintiff's height and weight were within normal range and a high protein diet was not warranted. (Id. ¶ 52.) At no time during any of these requests made by Plaintiff did he indicate that he was prescribed a special diet by DaVita. (Id. ¶¶ 26, 28, 32, 40, 46, 51.)

Then, on August 23, 2015, Plaintiff filed a Sick Call Request, explaining that he had a stroke a year ago and that he had been admitted to Temple University Hospital as a result. (Id. ¶ 53.) In response to this information, PrimeCare requested that Plaintiff execute an Authorization and Release in order for them to obtain Plaintiff's medical records. (Id. ¶ 54.) Plaintiff signed the Authorization and Release. (Id.) Plaintiff was assessed for a high protein diet on August 29, 2015 and it was determined that based upon his weight at intake of 136 and his

weight at the time of the assessment of 134, there was no need for a high protein diet. (Id. ¶ 55.)

On September 25, 2015, Plaintiff requested to be seen for an allergy to eggs. (Id. ¶ 56.) Plaintiff also filed a grievance on November 18, 2015, complaining that he goes to bed hungry every day because the medication he takes mixes with his anxiety and makes him hungry. (Id. ¶ 58.) Defendant Killian responded to the grievance by noting that based upon Plaintiff's body mass index, he is receiving the recommended dietary nutrient amounts and that he does not meet the criteria for additional food. (Id. ¶ 60.) Plaintiff filed another grievance on December 2, 2015, complaining that he needed another dietary food in place of eggs because he was allergic to them. (Id. ¶ 61.) Defendant Killian responded to this grievance by noting that since Plaintiff did not mention such an allergy on intake, he could sign a release to obtain records that verify the egg allergy. (Id. ¶ 63.) Plaintiff explained to a nurse on December 4, 2015 that he does not have an allergy to eggs outside of ACP, rather, he is just allergic to eggs at ACP. (Id. ¶ 64.)

Plaintiff was seen by a PrimeCare doctor on December 8, 2015, wherein he claimed that he was supposed to be on a high potassium diet. (Id. ¶ 65.) Based upon Plaintiff's self-reported allergy to eggs, the doctor ordered Plaintiff not to receive eggs. (Id.) The diet was to start December 8, 2015 and end March 8, 2016. (Id.) Plaintiff subsequently filed another Inmate Request Slip on December

7

15, 2015, requesting different dietary food in place of juice and processed meats and complained that he was not receiving the proper diet for his renal disease. (Id. ¶ 66.) Again, continuing up to this point and including the December 15, 2015 Inmate Request Slip, Plaintiff did not indicate that he was prescribed a special diet by DaVita. (Id. ¶¶ 57, 59, 62, 67.)

In response to the December 15, 2015 request, Plaintiff was told that a dietician reviews and approves all diets and any further concerns needed to be addressed to dietary. (Id. ¶ 68.) Plaintiff filed a Sick Call Request on December 20, 2015, complaining that he needed to stop eating processed meats because the testosterone is bad for his liver disease and kidney and that the water was tainted with testosterone. (Id. ¶ 69.) While Plaintiff was again advised that he needed to address his concerns to dietary, he failed to address the same with dietary. (Id. ¶¶ 70, 71.)

Plaintiff filed another Sick Call Request on December 22, 2015, requesting that he be seen by a doctor regarding his diet and that he wanted beans in place of meat. (Id. ¶ 72.) He was assessed by a PrimeCare doctor and it was determined that there was no reason to prescribe any other diet. (Id. ¶ 73.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material

fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a

genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION

The allegations in the amended complaint, as they pertain to Defendant Killian, are that: she is "legally responsible for supervis[ing] and monitor[ing] the medical employees of th[e] prison" (Doc. No. 16 at ¶ 17); "Plaintiff after confinement on June 12, 2015 suffered serious unnecessary pains at the hands of … [Defendant] Killian" (Id. ¶ 168); and that Defendant Killian "kn[e]w [through her] extensive experience that renal fault disease patient who, recover from Dialysis should have special diets" (Id. ¶ 177).

In his "concise statement of material facts of Plaintiff, Cabrera, in support of motion for opposition to summary judgment against Plaintiff," Plaintiff states that while he was admitted at Jeanes Hospital from May 6, 2014 to May 10, 2014, he

was assessed with a diet of "low salt." (Doc. No. 61-1 ¶ 5.) He further provides that the Jeans Hospital physician's order provided that DaVita is to follow the Temple Hospital discharge instructions. (Id. ¶ 18.) Plaintiff also states that he needed a "renal diet on June 12, 2015," the date Plaintiff was incarcerated at ACP. (Id. ¶ 31.) He provides that Defendant Killian had Plaintiff's medical records since August 27, 2015 (Id. ¶ 32), that throughout his incarceration at ACP he complained that he was not receiving the proper medical diet for his renal disease (id. ¶¶ 32, 38) and that Defendant Killian was aware that he should be on a low salt diet (id. ¶¶ 42, 43).[4]

Defendant Killian argues that summary judgment is appropriate in her favor because the record is devoid of any evidence that establishes that Plaintiff had a serious medical need or that she was deliberately indifferent to Plaintiff's serious medical need. (Doc. No. 58 at 14, 15.) In support of her motion for summary judgment, Defendant Killian refers to numerous exhibits that indicate that Plaintiff was not prescribed a special diet prior to his incarceration at ACP and that he never informed her that he was prescribed such a special diet. (Doc. No. 58.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment

---

[4] The Court notes that with the exception of paragraphs 5 and 18 of Plaintiff's statement of facts cited above, Plaintiff does not support paragraphs 31, 32, 42, or 43 with any reference to the parts of the record that support these statements in contravention of Local Rule 56.1.

12

"requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facil., 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197; see also Peterson v. Knauer, No. 03-5368, 2008 WL 509207, at *3 (E.D. Pa. Feb. 25, 2008) (explaining that the "the refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference). The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)).

13

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id.

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312 (1986). In Daniels v. Williams, 474 U.S. 327 (1986), the Court noted that "[l]ack of due care suggest no more than a failure to measure up to the conduct of a reasonable person." Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally"

14

or "recklessly" without supporting factual allegations. Wilson v. Seiter, 501 U.S. 294 (1991).

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

With respect to the instant action, even assuming a serious medical need, there is no evidence of deliberate indifference on the part of Defendant Killian. Upon entry into ACP for incarceration, Plaintiff was interviewed and medically screened. (Doc. No. 55 ¶ 23.) While Plaintiff's renal failure from one year prior

15

and dialysis were noted in Plaintiff's file, Plaintiff never informed the medical staff that he was on a special diet or that he was prescribed a special diet from a medical provider. (Id. ¶¶ 25, 26.) Indeed, Plaintiff's Receiving Screening form specifically notes: "Are you on a special diet prescribed by a physician?" and among the possible answers to select are: "Low fat/ **Low Salt**/ Low cholesterol/ High Fiber." (Id. ¶ 28, Ex. M, June 12, 2015 Receiving Screening) (emphasis added). The Receiving Screening record clearly shows that Plaintiff answered: "Special diet: **No**." (Id. ¶ 28) (emphasis added).

Moreover, throughout his incarceration at ADP, the record reflects that Plaintiff failed to inform Defendant Killian that he was prescribed a low sodium diet from a previous medical institution.[5] To be sure, in the various Inmate Request Slips, Sick Call Requests, and Grievance Forms filed by Plaintiff while incarcerated at ACP, not one mentions that Plaintiff was prescribed a low sodium diet. (Doc. No. 55 ¶¶ 26, 28, 32, 40, 46, 51, 57, 59, 62, 67, 69.) Rather, the bases of these requests and grievances filed by Plaintiff were for snacks, more food, vitamins, or a high protein diet, because Plaintiff felt hungry and believed he was underweight; not for a low salt diet. Further, the record reflects that Plaintiff received prompt responses and assessments to his requests and grievances by not

---

[5] As noted by Defendant Killian, despite Plaintiff's specific allegation in his amended complaint that he was ordered to follow a strict diet by his kidney doctor at DaVita, for the first time in Plaintiff's summary judgment filings, he now asserts that the low salt diet was actually prescribed by Jeanes Hospital. (Doc. No. 62 at 3.)

only Defendant Killian, but by a PrimeCare nurse and doctor who ultimately determined, based upon medical assessments, that Plaintiff was not entitled to a special diet.

Plaintiff asserts that Defendant Killian should have known through her experience that individuals recovering from dialysis should have special diets or that Defendant Killian should have known of his special low salt diet as of August 27, 2015 when PrimeCare faxed the Authorization and Release of Health Information to Temple University Hospital. (Doc. No. 61-1.) However, Plaintiff fails to support these conclusory assertions with any evidence in the record. Moreover, the record establishes that PrimeCare sought to procure Plaintiff's medical records from Temple University Hospital in relation to Plaintiff's assertion that he had a stroke a year prior to incarceration at ACP, not for purposes of discerning whether or not Plaintiff was prescribed a special diet. Indeed, at that point, Plaintiff never indicated that he was on a special diet.

Moreover, of the forty-eight (48) pages faxed to PrimeCare by Temple University Hospital, the only mention of a diet appears to be in the discharge instructions which provide "Resume the same diet, as before the hospital stay." (Doc. No. 55, Ex. J.) The purported medical provider that prescribed Plaintiff the low salt diet, however, was not from Temple University Hospital, but rather, from Jeanes Hospital. (Doc. No. 62.) However, Plaintiff never signed a release for

17

health information from Jeanes Hospital, only Temple University Hospital. Accordingly, Defendant Killian argues that she, nor anyone else at PrimeCare were ever in possession of the Jeanes Hospital records and had no knowledge that Plaintiff was prescribed a low salt diet.

An examination of the record in the light most favorable to Plaintiff reveals that Defendant Killian was not deliberately indifferent to his medical needs. As set forth more fully above, Plaintiff was seen and assessed by medical staff in response to Plaintiff's various requests and grievances regarding his requests for more food, vitamins, and a high protein diet. Plaintiff did not indicate in any of these requests that he was prescribed a special low salt diet. Indeed, the record clearly supports that Plaintiff stated that he was not on a special diet prescribed by a physician. Because there is no evidence that supports Plaintiff's contention that Defendant Killian acted with deliberate indifference, Defendant Killian's motion for summary judgment will be granted.[6]

---

[6] The Court need not address Defendant Killian's argument regarding supervisory liability since the Court has found no constitutional violation and accordingly, a supervisory claim cannot lie. Powell v. Weztel, No. 1:12-cv-2455, 2014 WL 2472088, at *4 (M.D. Pa. June 3, 2014).

## IV. CONCLUSION

For the reasons set form above, Plaintiff's motion for summary judgment is deemed withdrawn and Defendant Killian's motion for summary judgment will be granted. An appropriate order follows.

                                         s/Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge

Dated: January 10, 2018